# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALLIEDBARTON SECURITY SERVICES, LLC | : | |
| Plaintiff, | : | NO. 08-3583 |
| v. | : | |
| ONYX ON THE BAY, et al., | : | |
| Defendants. | : | |

## AMENDED MEMORANDUM[1]

GENE E.K. PRATTER, J.                                                                                  DECEMBER 22, 2009

AlliedBarton Security Services, LLC ("AlliedBarton") hopes to pursue claims for breach of contract and quasi-contact arising from the provision of security services in Florida. The sole remaining defendant, Onyx on the Bay Condominium Association, Inc. ("Onyx"), moves to dismiss the Amended Complaint on the grounds that the Court lacks personal jurisdiction over Onyx, that venue is improper, and that AlliedBarton failed to state a claim upon which relief can be granted. For the reasons stated below, the Court concludes that the motion should be granted because Onyx has insufficient contacts with the Commonwealth of Pennsylvania to support the Court's exercise of personal jurisdiction over it.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Given the relatively straightforward personal jurisdiction issues presented to the Court, this case already has an unusually lengthy procedural history. Suit was brought in Pennsylvania state court, in the name of Allied Security, Inc., against GGM Developers LLC, Sterling International Properties LLC, Onyx on the Bay, Onyx on the Bay Condominium Association,

---

[1] This Memorandum AMENDS and SUPERCEDES the Memorandum dated December 15, 2009 (Docket No. 48).

Inc., BAP-GGM Development LLC, and BAP Development Inc. Allied Security claimed that the Defendants breached a contract for security services, and sought recovery for its services represented by unpaid bills allegedly incurred by the Defendants.

Defendants removed the case to federal court on July 31, 2008, and three months later, default was entered against all of them for failure to plead or otherwise defend. Promptly thereafter, Defendants filed a motion to set aside default and dismiss the complaint, on the grounds that the Court did not have subject matter or personal jurisdiction, that venue was improper, that the Complaint failed to state a claim upon which relief could be granted, and that a necessary or indispensable party was not joined. Specifically, chief among Defendants' arguments were that 1) "Allied Security, Inc." was not a party or beneficiary to the contract at issue, and 2) Defendants did not have sufficient minimum contacts with Pennsylvania to be subject to personal jurisdiction in Pennsylvania.

Over the next few months, the parties filed various memoranda and exhibits regarding the motion, and conducted limited initial, informal discovery about the parties' corporate structures and proper names, contacts with Pennsylvania, and corporate relationships with one another. During the course of the discovery, Defendants filed a motion to compel production of information regarding the parties' corporate structure and jurisdiction. Not to be outdone, Allied Security filed a cross-motion to compel discovery. The dueling discovery motions necessitated a delay in the Court's scheduled hearing to resolve the motions, in favor of a telephone conference with counsel. During this conference, the parties discussed their prior, informal discovery efforts regarding jurisdictional issues and the parties' corporate structures and relationships. Following the conference, the Court granted the motion to set aside the default and mooted the motion to

dismiss. The Court granted in part and denied in part the competing discovery motions, and set a new jurisdictional discovery deadline. Defendants were granted leave to refile their motion to dismiss after the close of jurisdictional discovery, if appropriate.

However, before the close of jurisdictional discovery, Allied Security sought leave to file an amended complaint and correct its own name. At the parties' request, the Court extended the period for jurisdictional discovery and issued deadlines addressing the motion to file an amended complaint and change the name of the Plaintiff. The Court permitted Plaintiff to file an amended complaint in the name of "AlliedBarton Security Services, LLC."

In the Amended Complaint, AlliedBarton advanced causes of action for breach of contract and for quantum merit/quasi contract, on the grounds that Onyx had failed to pay AlliedBarton for security guards and other security services that AlliedBarton provided to Onyx in Florida. Specifically, AlliedBarton claims that it entered into a valid, written contract with Defendants, by which AlliedBarton "was to provide security guards at Defendants' location, and in exchange Defendants were to pay [AlliedBarton] a set rate for the guards' time and time for other security services." Id. at ¶ 13. AlliedBarton alleges that, although it performed the security services and sent invoices to Onyx, it was not paid. Id. at ¶ 14. AlliedBarton further asserts that Onyx did not cancel the contract but continued requesting services, made repeated promises to pay the required fees, and admitted owing the amount demanded under the contract. Id. at ¶ 15. AlliedBarton claims that the breach of contract and outstanding debt caused it to sustain damages in the amount of $178,703.00, which includes compensatory damages, attorney's fees, prejudgment interest and other damages. Id. at ¶ 19. AlliedBarton pleads, in the alternative and pursuant to Pa. R. C. P. 1020, that it is entitled to recover under the doctrine of quantum merit or

quasi-contract "for receiving unjust enrichment, receiving and retaining the benefit of the advertisements, which were provided by [AlliedBarton] under expectation of payment from Defendants with the good faith belief of contractual relationship." Id. at ¶ 21.[2]

With respect to personal jurisdiction and the parties' respective "minimum contacts," AlliedBarton alleges that it is registered to do business in Pennsylvania and the State of Florida, with a principal place of business in Pennsylvania, and that Onyx has a principal place of business in Florida. Id. at ¶¶ 1, 3. Further, AlliedBarton alleges that "[c]ommunications and contractual negotiations between the parties to this action were held in Pennsylvania or from Pennsylvania;" the "place of contracts on which this action is based is Pennsylvania." AlliedBarton contends that Defendants "regularly" sent payments to AlliedBarton's Pennsylvania office, Defendants "regularly" conduct business in Pennsylvania, Defendants "regularly" advertise and market to Pennsylvania residents and engage in business over the Internet accessible from Pennsylvania, and Defendants have "other substantial, ongoing contacts with Pennsylvania, Pennsylvania residents and Pennsylvania companies." Id. at ¶ 8. AlliedBarton alleges that "[v]enue of this action is properly in Montgomery County due to the fact that the contractual negotiations, the place of contract and the breach occurred, and Plaintiff's place of

---

[2] In the body of the Amended Complaint, AlliedBarton refers to "[e]xhibits and documents" attached to the Amended Complaint. Am. Compl. at ¶ 18. However, there were no attachments to the Amended Complaint. From the Court's review of the parties' filings, as well as the discussion at the oral argument on the motion to dismiss, it appears that AlliedBarton's reference to "[e]xhibits and documents" in the Amended Complaint was intended to refer to exhibits attached to the original Complaint (which was superceded by the Amended Complaint), exhibits attached to the Motion to Dismiss the Amended Complaint, and/or exhibits attached to AlliedBarton's Supplemental Opposition to the Motion to Dismiss the Amended Complaint. The Court has considered all of these exhibits in ruling on the motion to dismiss.

business is located, in King of Prussia, Montgomery County, Pennsylvania." Id. at ¶ 9. Montgomery County is, of course, within the Eastern District of Pennsylvahnia.

Throughout the past summer months, the parties continued to have disputes with each other. AlliedBarton filed a motion to compel and for sanctions, arguing that Defendants had failed to produce documents related to jurisdiction, failed to answer interrogatories related to jurisdiction, and failed to produce for deposition a designated representative on jurisdictional issues. The Court ultimately ordered that AlliedBarton be allowed to depose Defendants' jurisdictional representative, and to file a supplemental opposition to the motion to dismiss by September 18, 2009. Nonetheless, the Court received correspondence and a stipulation from the parties, asking for another extension of time for Plaintiff to complete the deposition of Defendants' jurisdictional representative and to file a supplemental opposition brief regarding the motion to dismiss. The Court granted the requested extension, and adjusted the briefing schedule accordingly.

An oral argument on the motion to dismiss was held on November 23, 2009. At the oral argument, AlliedBarton elected to proceed only against Onyx, and to dismiss GGM Developers LLC, Sterling International Properties LLC, Onyx on the Bay, BAP-GGM Development LLC, and BAP Development Inc. from the action. See 11/23/2009 Oral Argument Tr. at 18-19.

II.   DISCUSSION

   A.   Standard of Review

After a defendant has raised a jurisdictional defense, the plaintiff bears the burden to come forward with enough evidence to establish, with reasonable particularity, sufficient contacts between the defendant and the forum. Provident Nat'l Bank v. Cal. Fed. Sav. & Loan

Assoc., 819 F.2d 434, 437 (3d Cir. 1987). The plaintiff "must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence," and "at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. Once the motion is made, plaintiff must respond with actual proofs not mere allegations." Patterson v. FBI, 893 F.2d 595, 603-04 (3d Cir. 1990) (quoting Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 67 n.9 (3d Cir. 1984) (citation omitted)). See also, generally, Atiyeh v. Hadeed, No. 04-2621, 2007 U.S. Dist. LEXIS 19534 (E.D. Pa. Mar. 20, 2007).

The Court may proceed either based upon affidavits and sworn documents or conduct an evidentiary hearing. Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is "clearly frivolous." Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 456 (3d Cir. 2003). "Where no evidentiary hearing has taken place, the plaintiff must make out a prima facie case." Atiyeh, 2007 U.S. Dist. LEXIS 19534, at *14 (citing LaRose v. Sponco Mfg., Inc., 712 F. Supp. 455, 458 & n.2 (D.N.J. 1989)). See Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999) (noting that district courts are afforded "considerable procedural leeway" in deciding motions to dismiss under Rule 12(b)(2), which may test the facts supporting the jurisdictional theory as well as plaintiff's theory of jurisdiction) (internal citations omitted).

Here, the Court permitted the parties to conduct limited discovery, on an expedited basis, regarding the issue of personal jurisdiction. Indeed, the Court indulged both parties throughout the pendency of these issues. At the oral argument on the motion to dismiss, the parties agreed

that there was no reason or request for the Court to conduct an evidentiary hearing, and asked the Court to decide the motion based on the evidence attached to the parties' filings. See 11/23/2009 Oral Argument Tr. at 4-5.

    B.    Overview of Personal Jurisdiction

Where, as here, a federal court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, the "federal district court may assert personal jurisdiction over a non-resident of the state in which the court sits to the extent authorized" by that state's law. Fisher v. Teva PFC SRL, No. 05-4238, 2006 U.S. App. LEXIS 31741, 4-5 (3d Cir. Dec. 22, 2006) (citing Provident Nat'l Bank, 819 F.2d at 436). Because Pennsylvania's long-arm statute "provides that its reach is coextensive with the limits placed on the states by the federal Constitution," the Court must refer to federal constitutional doctrine to determine whether personal jurisdiction exists over the Defendants. Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co., 75 F.3d 147, 150 (3d Cir. 1996); 42 Pa. C.S.A. § 5322(b). A two-part test is used to consider whether the Court's exercise of personal jurisdiction is permissible under the Constitutional limits: (1) the defendant must have "purposefully established 'minimum contacts' in the State," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985); and (2) the exercise of jurisdiction must be consistent with "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citations omitted).

    C.    Minimum Contacts

The Pennsylvania long-arm statute provides for the exercise of general and specific jurisdiction over non-resident defendants. 42 Pa.C.S.A. §§ 5301, 5322. The Court may exercise general jurisdiction over a defendant when the defendant maintains "a continuous and systematic

part of its general business within this Commonwealth." 42 Pa.C.S.A. § 5301(2)(iii); see also Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 416 (1984) (general personal jurisdiction exists when the defendant's contacts with the forum, whether or not related to the litigation, are "continuous and systematic"); see also BP Chems. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 259 (3d Cir. 2000) (citing Helicopteros). Specific personal jurisdiction, on the other hand, is proper when "the plaintiff's 'claim is related to or arises out of the defendant's contacts with the forum.'" Lehigh Coal & Navigation Co. v. Geko–Mayo, GmbH, 56 F.Supp.2d 559, 565 (E.D.Pa.1999) (quoting Mellon Bank (East) PSFS, N.A. v. Farino, 960 F.2d 1217, 1221 (3d Cir.1992) (citation omitted)). To successfully assert specific jurisdiction, a plaintiff must prove that the defendant has "'purposefully directed' his activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or related to' those activities." Burger King, 471 U.S. at 472 (citations omitted).

To determine whether a defendant has had sufficient contact with the forum for the Court to exercise jurisdiction, the Court must inquire whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." Burger King, 471 U.S. at 474 (quoting World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). The Supreme Court stated:

> [W]here the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

Id. at 475 (internal citations omitted).

In contract actions, a "highly realistic" approach is required in determining whether a

nonresident contracting party is subject to personal jurisdiction, because a "contract is ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." Burger King, 471 U.S. at 478. Where a contract is involved, courts should also inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach. GE v. Deutz AG, 270 F.3d 144, 150 (3d Cir. 2001).

The mere existence of a contract with an out-of-state party does not automatically establish personal jurisdiction over that party, Burger King, 471 U.S. at 478, but the requisite contacts may be supplied by the terms of the agreement, the place and character of prior negotiations, contemplated future consequences, or the course of dealings between the parties. Id. at 479; Mellon Bank, 960 F.2d at 1223; Vetrotex, 75 F.3d at 151. In Vetrotex, the Court of Appeals for Third Circuit held that in contract cases in which the defendant was merely a "passive buyer" of products from the forum state, the exercise of personal jurisdiction would be improper. Vetrotex, 75 F.3d at 152. The court distinguished such cases from others where: (1) the "defendant solicited the contract or initiated the business relationship"; (2) the "defendant sent any payments to the plaintiff in the forum state"; or (3) the "defendant engaged in extensive post-sale contacts with the plaintiff in the forum state." Id. at 152–53 (internal citations omitted). See also North Penn Gas Co. v. Corning Natural Gas Corp., 897 F.2d 687, 690 (3d Cir. 1990) (finding minimum contacts where defendant sent consecutive payments to plaintiff in Pennsylvania and reserved space in plaintiff's storage fields in Pennsylvania).

D.  The Parties' Filings

AlliedBarton argues that it has established sufficient contacts between Onyx and the

9

Commonwealth of Pennsylvania to warrant the Court's exercise of specific personal jurisdiction in this case.[3] As set forth above, the Amended Complaint contains numerous jurisdictional allegations purporting to connect Onyx with Pennsylvania. See Am. Compl. at ¶ 8. However, despite having ample time to conduct jurisdictional discovery, including the exchange of documents and at least one deposition, AlliedBarton provides insufficient evidence to support its jurisdictional allegations. See 11/23/2009 Oral Argument Tr. at 12-16.

In the first place, there is no evidence that the formation of the parties' contract reflects minimum contacts between Onyx and Pennsylvania. Onyx asserts that the operative contract was negotiated and signed in Florida by Robert Krebs, District Manager for AlliedBarton, and by the Controller of Onyx on the Bay. See Mot. to Dismiss Am. Compl. at 1. This assertion is

---

[3] Although AlliedBarton does not explicitly concede that there is no general personal jurisdiction, all of the arguments in its briefs focus on specific, and not general, personal jurisdiction. See, e.g., Initial Opp'n to Mot. to Dismiss Am. Compl. at 5. ("Repeated *contacts and relations* with the King of Prussia, Pennsylvania office over the account *that is the basis of this lawsuit* creates *specific* jurisdiction. The invoices were created and sent from the King of Prussia, Pennsylvania office and payment was made to the Pennsylvania office.") (emphasis added). Similarly, at no point during the oral argument on the motion to dismiss did AlliedBarton argue that the Court could exercise general jurisdiction over Onyx. See 11/23/2009 Oral Argument Tr. The only evidence that could possibly be construed as relating to the existence of general jurisdiction, as opposed to specific jurisdiction, was Ms. Adair's testimony that Onyx on the Bay maintained a website that could be accessed from other states, including Pennsylvania. See AlliedBarton's Suppl. Opp'n to Mot. to Dismiss Am. Compl. at Exhibit 1, at 28. However, Ms. Adair testified that she believed the website was "strictly advertising" and that business could not be transacted through the website; she did not know whether emails could be sent through the website. Id. There is no evidence that Onyx used its website to sell any products to Pennsylvania residents, conduct any business with Pennsylvania residents, or otherwise solicit or target Pennsylvania residents. All things considered, for the reasons set forth in this Memorandum, the Court is satisfied that AlliedBarton has not presented evidence that would support the Court's exercise of specific or general personal jurisdiction. See Ciolli v. Iravani, No. 08-2601, 2009 U.S. Dist. LEXIS 77015, **15-17 (E.D. Pa. Aug. 27, 2009) (holding that the court did not have general jurisdiction over a company that had no offices in Pennsylvania, had not conducted sufficient business in Pennsylvania via internet sales, and had not specifically targeted business or residents in Pennsylvania).

10

supported by the affidavit from Norman Wartman, an Onyx officer.[4]  AlliedBarton has presented no evidence to counter the affidavit, or to otherwise suggest that the contract was negotiated or signed in Pennsylvania.

The written contract itself does not provide any suggestion of minimum contacts between Onyx and Pennsylvania.  For example, the only addresses listed for AlliedBarton and Onyx are in Miami, Florida.  There is nothing in the contract to connect any party to Pennsylvania.  Nowhere in the contract (or otherwise) is there any indication that AlliedBarton has a principal place of business, or even an office, in Pennsylvania.  Moreover, the contract actually specifies that Florida law shall govern the contract and all issues collateral to it.[5]

AlliedBarton has provided no evidence that any in-person or telephone communications actually took place between the parties *in* Pennsylvania, or that any communications were sent by Onyx *to* Pennsylvania. Indeed, AlliedBarton points to only one collection letter that was sent *from* its office in Pennsylvania, *to* Adeylyda Garcia, CEO of Biscayne Bay Lofts in Florida, complaining that AlliedBarton had not been paid for its services.  The letter was apparently copied to the President of Onyx, as well as other individuals.  See AlliedBarton's Suppl. Opp'n

---

[4] The affidavit is conclusory in nature, in that it does not set forth any specific facts to which Mr. Wartman is attesting; rather, it simply contains the general assertion that "the facts and statements as set forth" in Defendants' briefs "are true and correct to the best of [Mr. Wartman's] knowledge and belief."  See Affidavit of Norman Wartman.  However, AlliedBarton did not challenge Onyx's use of this conclusory affidavit.  See 11/23/2009 Oral Argument Tr. at 5-6.

[5] The contract specifically provides, "[t]his Agreement and all matters or issues collateral hereto shall be governed by the laws of the state wherein the security services are to be provided without reference to its choice of law provisions."  Mot. to Dismiss Am. Compl. at Exhibit A, at 7.  The contract provides that AlliedBarton is responsible for various security services at the Onyx building in Florida, including the hiring and supervision of all security officers and the provision of on-site training and professional uniforms.  Indeed, there is no suggestion that any services could or would be performed *outside* the state of Florida.  See Mot. to Dismiss Am. Compl. at Exhibit A.

to Mot. to Dismiss the Am. Compl. at Exhibit 4.  However, there is no evidence that Onyx (or anyone else) ever responded to AlliedBarton's office in Pennsylvania.  The importance of this letter to the Court's jurisdictional inquiry is de minimis at best.  Certainly, it does not tie *Onyx* to Pennsylvania, even though it provides some minimal connection between *AlliedBarton* and Pennsylvania.

AlliedBarton also contends that it prepared invoices *in* Pennsylvania, and then sent them *from* Pennsylvania *to* Onyx in Florida.  See AlliedBarton's Suppl. Opp'n to Mot. to Dismiss the Am. Compl. at Exhibit 3; 11/23/2009 Oral Argument Tr. at 6.  However, just as with the collection letter, there is no evidence that Onyx ever responded to AlliedBarton in Pennsylvania.  On the contrary, the invoices sent by AlliedBarton actually directed Onyx to send remittance to an office in the state of Georgia.  Id.  Onyx represents that all of its payments pursuant to the contract were, in fact, sent to Georgia as the invoices directed.  See 11/23/2009 Oral Argument Tr. at 6; Affidavit of Norman Wartman.  In any event, there is no evidence that Onyx sent any payments or related correspondence to Pennsylvania.

AlliedBarton does point to a single check that was *addressed* to its Pennsylvania office, but the payor on this check was not Onyx, but rather Biscayne Bay Lofts LLC, an entity based in Florida and not named in this lawsuit.  See 11/23/2009 Oral Argument Tr. at 7, 14-15.  Based on the deposition of Ms. Adelaida Adair, who worked for Biscayne Bay Lofts, AlliedBarton argues that this check was issued in payment for the security services that AlliedBarton provided to Onyx, and that the corporate relationship between Onyx and Biscayne Bay Lofts allows the Court to exercise personal jurisdiction over Onyx.  See AlliedBarton's Suppl. Opp'n to Mot. to Dismiss Am. Compl. at 30-31, and at Exhibit 2;  11/23/2009 Oral Argument Tr. at 7-8.  Onyx

does not deny this payment, and even acknowledges that "if this payment was made, it was made in payment for the services [that AlliedBarton performed for Onyx]." 11/23/2009 Oral Argument Tr. at 7-8. AlliedBarton urges the Court to infer that, because the check was *addressed* to its office in Pennsylvania, the check was actually *sent* to Pennsylvania by Biscayne Bay Lofts, which AlliedBarton argues helps to establish minimum contacts between Onyx and Pennsylvania. See 11/23/2009 Oral Argument Tr. at 14-15.

The Court declines to make this inference. There is no transmittal letter or any other evidence to justify holding that the payment was sent from Florida to Pennsylvania. There is no witness to testify or declare under oath that this check – or any other check relevant to this case, for that matter - was actually sent from Florida to Pennsylvania. Indeed, it is unlikely that there would be any such documentary or testimonial evidence, given that the instructions on AlliedBarton's invoices were to send all payments to Georgia, which Onyx affirms it did. See AlliedBarton's Suppl. Opp'n to Mot. to Dismiss the Am. Compl. at Exhibit 3, at 30-31; Affidavit of Norman Wartman; 11/23/2009 Oral Argument Tr. at 6. Moreover, even if the one check *was* sent to Pennsylvania in payment for AlliedBarton's security services, it is not, by itself, nearly sufficient to support this Court's exercise of personal jurisdiction over Onyx.

AlliedBarton chiefly relies on three cases. All of these cases can be distinguished on their facts, and none of them change the Court's conclusions on jurisdiction.

In General Motors Acceptance Corp. v. Keller, 737 A.2d 279, 282-83 (1999), the court determined that appellee had minimum contacts with Pennsylvania to support personal jurisdiction because the disputed transaction was the third car purchase that appellee had made from the same Pennsylvania car dealer, having secured identical financing each time by the car

dealership's Pennsylvania office, and appellee was well aware that he was contracting with Pennsylvania businesses in purchasing and financing his automobiles. Similarly, in Grand Entertainment Group, Ltd. v. Star Media Sales, Inc., 988 F.2d 466, 481-484 (3d Cir. 1993), the Third Circuit Court of Appeals determined that the appellants had minimum contacts with Pennsylvania because they directed numerous communications to Pennsylvania via telephone and the mail, regarding contract negotiations and other matters related to the legal dispute in the case. In Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001), the Court of Appeals determined that the Pennsylvania-based district court could exercise personal jurisdiction over the defendant where the defendant sought out plaintiff by placing a call to plaintiff's associate at an office in Philadelphia. This solicitation resulted in the fee agreement between plaintiff and defendant, which defendant signed and returned to Pennsylvania. Id. The agreement itself noted that it was formalized in accordance with the Pennsylvania Rules of Professional Conduct, and at least one payment was sent by defendant to plaintiff in the Philadelphia office; moreover, most of the services performed by plaintiff for defendant were conducted at plaintif's Philadelphia office, which defendant knew to be plaintiff's home office. Id.

In contrast to Keller, Grand Entertainment Group, and Remick, here there is no evidence that repeated communications or solicitations were sent by Onyx to Pennsylvania concerning the disputed contract. And, in contrast to Remick, here there was nothing in the contract regarding the applicability of, or required performance in accordance with, Pennsylvania law. Until the collection letter and invoices were received, there was was nothing to give Onyx any reason to believe that it might be dealing with a company that did business in Pennsylvania. On balance, the contacts with Pennsylvania in this case are far fewer and weaker than in the cases that

AlliedBarton cites, and the Court concludes that it cannot exercise personal jurisdiction over Onyx.

    E.    Traditional Notions of Fair Pay and Substantial Justice, and Improper Venue

Under the first inquiry, it is clear that AlliedBarton can not establish the requisite "minimum contacts" between Onyx on the Bay and the Commonwealth of Pennsylvania to support general or specific personal jurisdiction. Therefore, it is not necessary to proceed to the second inquiry, namely, whether exercising personal jurisdiction over the defendants would comply with notions of "fair play and substantial justice." It is also not necessary to consider the parties' arguments regarding improper venue or the sufficiency of the allegations to support a claim.

III.    CONCLUSION

For the above reasons, the Court grants the motion to dismiss the Amended Complaint. This dismissal shall be without prejudice with respect to Defendants Onyx on the Bay and Onyx on the Bay Condominium Association, Inc., and with prejudice with respect to Defendants BAP-GGM Development LLC, BAP Development, Inc., GGM Developers LLC, and Sterling International Properties LLC.

                                            BY THE COURT:

                                            S/Gene E.K. Pratter
                                            GENE E.K. PRATTER
                                            UNITED STATES DISTRICT JUDGE